GEORGE E. PUGH, PETITIONER-DEFENDANT, v. WINSLOW CONSTRUCTION COMPANY, RESPONDENT-PROSECUTOR.

Submitted October 5, 1943—Decided November 1, 1943.

Before BROGAN, CHIEF JUSTICE, and Justices BODINE and COLIE.

For the petitioner-defendant, *Maurice Y. Cole.*

For the respondent-prosecutor, *John W. Taylor.*

PER CURIAM.

This is a compensation case and the application is for additional compensation on account of increased disability, the petitioner claiming present total disability. The deputy com-

missioner in the Bureau determined that the petitioner's disability was permanent and total and on appeal the Atlantic County Court of Common Pleas affirmed that finding. The sole issue here is the extent of the petitioner's disability as a result of the accident. The respondent employer, prosecutor of this writ, contends as it contended in the Bureau and the Pleas that the petitioner's disability does not exceed seventy-five per cent. of total, for which compensation has been paid and that any disability beyond that is the result of causes independent of the accident, particularly from the disease of syphilis with which the petitioner has been infected for many years. The petitioner's accident, admittedly compensable, occurred in 1930. In 1936 a claim petition for compensation was filed alleging that the injuries had resulted in total, permanent disability. It was then determined that the petitioner suffered a permanent, partial disability to the extent of fifty-five per cent. of total, and an award was accordingly made. A second such petition was filed in June, 1937, and concluded in 1938. The deputy commissioner made no determination but rather ordered a judgment for the petitioner on the basis of a settlement, fixing seventy-five per cent. of total disability as due to the accidental injury and the compensation therefor was paid. A third such petition was filed in October, 1939, the claim being that the petitioner's disability had again increased since the previous award based on the settlement and the claim was that the disability had increased to a point where it resulted in total, permanent disability. This matter was heard and on February 11th, 1942, the deputy commissioner determined that the disability in question had increased and was then permanent and total. Thus the award was increased twenty-five per cent. over that which had last previously been made.

The argument for reversal, in the main, is that the petitioner failed to discharge the burden of proof and that the Bureau fell into legal error by permitting a collateral attack upon the findings of fact and rules for judgment previously entered under the judgments of December, 1936, and April, 1938; further, that it was error to determine that the petitioner's loss of vision in his right eye was chargeable to the

accident inasmuch as previously it was said that such loss of vision was unrelated thereto; also that the allowance of compensation beyond the 400 week period provided by *R. S.* 34:15–12(b) was illegal.

The accident happened on January 30th, 1930, Pugh, the petitioner, fell from the seventh floor of the building in which he was working. One of his legs and an ankle were broken. His hip was broken and his back and shoulder dislocated. Shortly thereafter he complained about impaired vision in his right eye. In August, 1940, there was loss of sight in that eye.

On the fact issue of the case there is much medical testimony. The testimony offered by Dr. Major, for the petitioner, was the result of five examinations made at different intervals, the first in 1938; two in 1940 and two in 1941. The doctor was of the opinion that the "petitioner was one hundred per cent. totally disabled" and that there had been an increase in disability over the last time the matter had been before the Bureau. This witness frankly said that the blindness in one eye could be due to the disease he had or the injuries; that the disease was latent at the time. Dr. Fowler, for the petitioner, testified to the injuries, already mentioned, plus the fact that there was a recurring osteomylitis at the ankle joint; that the disability had not been retarded at all but had progressed since 1938. The doctor disclaimed knowledge that the petitioner was infected with syphilis. Dr. Raynor testified that he had examined the petitioner twice in 1941. He described the disability in detail, said that Pugh could not move around except with difficulty and had to use a cane for support; that the achilles tendon in the right foot had contracted causing his heel to tilt upward and that the adjacent tendons had also contracted; that the sight of the right eye was lost and there were some deformities in the lumbar vertebrae. Concluding as he did that there was much deformity of the right foot and lower leg, plus the contraction of the tendons and muscles, as well as fifty per cent. absence of function in the left knee joint, loss of the sight in the right eye, and a good deal of limitation of motion in the right shoulder, plus a test which indicated latent syphilis, it was

the doctor's opinion that the petitioner was totally and permanently disabled as a result of the accident of January, 1930. He also stated that, in his opinion, even if petitioner had sight in his right eye he was still totally disabled. Dr. Klein, for the petitioner, had made examinations of him each year from 1936 to 1938 and through 1940 and in 1941. He agreed with the previous witnesses about the result of the injuries which Pugh suffers and was of the opinion that he is totally disabled. He expressed the view that the disease which Pugh had contracted contributed in no way to his present disability, pointing out that he had had no treatment for it and there was no outward sign of it, its presence being known from the blood test.

The medical witnesses for the employer entertained an opposite view. Dr. Becker examined the petitioner in June, 1940. He testified that the petitioner told him that he had been treated for a venereal disease in 1915 but not since. This witness did not know whether the condition of the left knee had anything to do with the disease petitioner had because, as he said, he had not X-rayed that knee. The doctor was of the view that the loss of the sight in the right eye was not caused by the accident. Dr. Allman, for the respondent, testified that he made three examinations of the petitioner, one in 1936, one in 1940, and one in 1941. When he examined the man in 1940 he considered that he had a permanent disability of fifty per cent. of total and after his examination in 1941 he thought that there had been an increase of five per cent. He considered that the presence of the disease militated against the normal healing of the fractures. Dr. Mason, for the respondent, apparently attended him at the time of the accident in 1930. He said that some time later— he thought a few years—Pugh complained about loss of vision in the right eye. After his examination in 1939 this witness concluded that the petitioner had a permanent disability of seventy per cent. of total and after his examination in September, 1940, he estimated the disability had not changed. Dr. Carrington, for the respondent, testified that he examined petitioner in September, 1936, at which time he considered that he had a fifty per cent. total permanent disability. He

again examined Pugh in 1940 and considered then that the condition had improved and disability was somewhat less. On a third examination in 1941 he considered petitioner had a permanent disability of eighty per cent. of total; that the blindness in the right eye was not due to the accident and that sixty-five to seventy per cent. of his present disability was due to the accident, twenty per cent. due to the loss of vision, and ten to fifteen per cent. to disease.

There was no dispute but that the petitioner had serious, permanent injuries which resulted in permanent disability, the only disagreement being as to the percentage of total which was due to the accident. It was determined in the Bureau that even though the loss of vision in the right eye was not chargeable to the accident that nevertheless the petitioner has had a permanent, total disability. The conclusion of the deputy commissioner was that there was no causal relation between the disease the petitioner had and the loss of the sight of the eye but that such loss was due to the accident. This conclusion seems to us a reasonable one from a consideration of the testimony in the case. The petitioner testified that prior to the accident he had never been sick and that he enjoyed normal health. There was some corroboration for this statement in the testimony of Dr. Fowler who had treated the petitioner for minor ailments prior to the accident.

When facts are in issue it is our duty to determine them, when they are under review by *certiorari*. The weight of the evidence must be considered. It is of some moment in that consideration where, as here, two other fact finding tribunals are in accord in their conclusions thereon. In the Bureau the deputy commissioner saw and heard the witnesses. The Pleas, too, on appeal passed on the facts. These tribunals are in agreement on those facts. Their determination thereon should not be disturbed in the absence of a sound reason therefor. *Anderson* v. *Federal Shipbuilding and Dry Dock Co.*, 118 *N. J. L.* 55, and cases cited therein. We also agree with the fact findings below.

The next point made by prosecutor is that the judgment under review is in conflict with and is a collateral attack

upon previous rules for judgment entered in this court; that it was determined in 1938 that the petitioner had a syphilitic infection which caused a disability equivalent to fifteen per cent. of total and that it was established in that case that the petitioner's right eye was blind from that cause or at least from a cause unrelated to the accident. We cannot agree that this is so. There was no such adjudication. The award of April 5th, 1938, was the result of agreement and settlement between the parties as was the award made on the claim petition filed in 1936. There is no merit therefore in this point. It is also said that there was error in determining that the loss of vision was chargeable to the accident. This point has been dealt with and it might not be inappropriate to point out that the commissioner found that even though there was no loss of vision there still was permanent, total disability.

It is next said it was error to extend compensation benefits beyond 400 weeks. We do not find this to be so. In our judgment, the opinion of this court in *Lukis* v. *Armour & Co.*, 125 *N. J. L.* 92, disposes of that argument. See, also, *Petersen* v. *Foundation Co.*, 128 *Id.* 235, 239. It is objected that there was received in evidence the report of the New Jersey Rehabilitation Commission. The determination of the Bureau in this matter was prior to the receipt of any such exhibit and cannot be said to have been based upon it. In the judgment of February 11th, 1942, the petitioner was referred to that Commission by the referee on the matter of whether or not he might be rehabilitated and in this connection it is clear that the prosecutor of this writ may apply for a reconsideration of the findings of the Rehabilitation Commission at any time, as is provided by the statute *R. S.* 34:15-12(b).

Our conclusion is that the judgment under review should be affirmed, with costs.